IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 5, 2015

## CHARLES E. JONES v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. P-26528      Lee V. Coffee, Judge**

---

**No. W2014-02306-CCA-R3-PC  -  Filed June 24, 2015**

---

Petitioner, Charles E. Jones, appeals the post-conviction court's denial of his petition for DNA testing pursuant to the Post-Conviction DNA Analysis Act of 2001, alleging that DNA testing of glass shards found at the crime scene would have resulted in a more favorable verdict or sentence. The post-conviction court summarily dismissed the petition. Perceiving no error, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT W. WEDEMEYER, JJ., joined.

Charles E. Jones, Pikeville, Tennessee, Pro Se.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Karen Cook, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

#### I.  Facts and Procedural History

In this court's opinion denying petitioner's direct appeal, the following facts were ascertained:

On May 29, 1998, Officer Jeff Dennison of the Memphis Police Department was on patrol when he was flagged down by Hubert Sturdivant. Sturdivant advised Officer Dennison that there was a dead body in Sturdivant's house at 1357 Taylor Street in Memphis. Officer Dennison immediately radioed for assistance and was followed to the scene by

Officer Stephen Thaggard. When the officers arrived at the scene, they saw broken glass on the steps and porch of the house. As the officers stepped onto the front porch, the door opened and [petitioner] stood in the doorway.

When [petitioner] opened the door, the officers were able to see a dead body rolled up in carpet lying on the living room floor. Officer Dennison immediately ordered [petitioner] to get down, then handcuffed him, and placed him in the back of Officer Thaggard's car. Both officers observed that [petitioner] was calm during the entire episode and never appeared to be upset. [Petitioner] had scratches on his neck, blood splatters on his left ear, a scratch on his [cheek], blood splatters in his hair, and a cut on his finger.

Officer Thaggard proceeded into the house. He testified at trial that the victim's bloody head was sticking out of the carpet. He saw blood splatters in the living room, on the shades, on the floor, "everywhere-it's blood everywhere." In the dining area, he saw blood on the floor and marks on the floor that indicated that something had been dragged across the area. Next to the victim's body, Officer Thaggard discovered a bucket of soapy water with a rag in it. He noted that the water was red, as if discolored by blood. A garbage can in the room contained broken glass and blood.

[Petitioner] was taken from the scene to the Regional Medical Center (Med) for examination and treatment. Captain Joseph Eldridge of the Memphis Police Department interviewed [petitioner] at the Med. Captain Eldridge recounted that he advised [petitioner] of his Miranda rights and asked [petitioner] if he wanted to give a statement. [Petitioner] answered affirmatively and responded that he had killed the victim because she had "disrespected" him and knocked his crack pipe out of his hand. Captain Eldridge did not reduce this statement to writing.

[Petitioner] was taken from the Med to the Criminal Justice Center. After again being advised of his rights, [petitioner] gave a written statement. [Petitioner] related that he met the victim when he "went to the dope house" to buy crack cocaine. After purchasing the crack cocaine, [petitioner] went to a store up the street and purchased beer and cigarettes. The victim, who was standing in the parking lot of the store, began following [petitioner]. [Petitioner] invited her to accompany him to his house. When they arrived at his house, the two drank beer and smoked "$50 dollars worth of crack." After smoking crack cocaine, [petitioner] asked the victim to have sex with him. The victim agreed and removed her

-2-

clothes.  Later, the victim became angry when [petitioner] refused to give her more crack cocaine.  According to [petitioner], the victim knocked a crack pipe from [petitioner]'s hand and they "got to wrestling."

[Petitioner] alleged that the victim had a box cutter, which she began swinging at him, and cut him on the finger.  [Petitioner] insisted that he cut the victim only three times in an effort to defend himself.  He admitted that during their struggle, the victim was unclothed.  He claimed that, after being cut, the victim attempted to jump through a window.  However, there were bars on the window and she was unable to escape.  He contended that the glass from the broken window caused most of the victim's injuries.

When the struggle ended, [petitioner] claimed that he panicked and did not know what to do with the victim.  He taped the victim's ankles and wrists together and placed a garbage bag on the upper portion of her body.  He then rolled the body inside a piece of carpet.  Attempting to clean up the blood, he placed the victim's clothes, his clothes, a wig, and the broken glass in a garbage bag.  He then walked out onto his porch and smoked a cigarette.

[Petitioner] admitted that he did not call for medical assistance for the victim or call the police. He did not know the victim's name and explained that he had never met her before the day of the incident.

Dr. O'Brian Cleary Smith, the Shelby County medical examiner, testified that the autopsy of the victim revealed eighty-three separate wounds on the victim's body. He described approximately sixty-eight stab and incised wounds to the head, neck, torso, and extremities, opining that seven of the wounds were fatal.  The primary causes of death were: a stab wound through the esophagus; a stab wound through the left jugular vein; a stab wound through the subclavicula vein; a stab wound to the right lung; a stab wound involving tissues of the center of the chest; a stab wound to the left lung; and a stab wound to the back.  He concluded that the wounds were consistent with injuries from a box cutter, although he acknowledged that some of the wounds could have been caused by broken glass. However, no glass was found in any of the victim's wounds. Additionally, Dr. Smith reported that [petitioner]'s blood was tested for the presence of cocaine. Dr. Smith related that a result of .1 or .2 micrograms of cocaine per milliliter is considered normal street level usage.  [Petitioner]'s test results showed a level of .13 micrograms per milliliter.

At the conclusion of the trial, the jury found [petitioner] guilty of first degree murder. The trial court sentenced [petitioner] to life imprisonment in the Tennessee Department of Correction.

*State v. Charles E. Jones*, No. W2000-02606-CCA-R3-CD, 2001 WL 1381270, at *1-2 (Tenn. Crim. App. Nov. 2, 2001). Petitioner subsequently pursued post-conviction relief, which was denied. This court affirmed the denial on appeal. *See Charles E. Jones v. State*, No. W2007-01086-CCA-R3-PC, 2008 WL 4489668 (Tenn. Crim. App. Oct. 6, 2008), *perm. app. denied* (Tenn. March 23, 2009).

## II. Petition for Post-Conviction DNA Analysis

Petitioner filed a petition for "DNA Post-Conviction Relief" pursuant to Tennessee Code Annotated sections 40-30-301 and -305 requesting DNA testing of glass shards found at the scene of the murder. As grounds therefore, he states, "Dr. O.C. Smith stated at trial[] that the victim's wounds could have been caused by sharp glass. Trial counsel did not request that the glass shards found on the scene be tested for blood or tissue. Dr. O.C. Smith stated that additional testing could have been done if it had been requested."

The Post-Conviction DNA Analysis Act of 2001 ("The Act") allows petitioners convicted and sentenced for certain homicide and sexual assault offenses in which biological evidence may have existed to request post-conviction DNA testing. Tenn. Code Ann. § 40-30-303. The Act contains no statutory time limit and extends to petitioners the opportunity to request analysis at "any time," regardless of whether such a request was made at trial:

> [A] person convicted of and sentenced for the commission of first degree murder . . . may at any time, file a petition requesting the forensic DNA analysis of any evidence that is in the possession or control of the prosecution, law enforcement, laboratory, or court, and that is related to the investigation or prosecution that resulted in the judgment of conviction and that may contain biological evidence.

*Griffin v. State*, 182 S.W.3d 795, 799 (Tenn. 2006) (citing Tenn. Code Ann. § 40-30-303). In the first instance, mandatory DNA analysis must be ordered in cases where the trial court finds that:

> (1) A reasonable probability exists that the petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through DNA analysis;

-4-

(2)      The evidence is still in existence and in such a condition that DNA analysis may be conducted;

(3)      The evidence was never previously subjected to DNA analysis or was not subjected to the analysis that is now requested which could resolve an issue not resolved by previous analysis; and

(4)      The application for analysis is made for the purpose of demonstrating innocence and not to unreasonably delay the execution of sentence or administration of justice.

Tenn. Code Ann. § 40-30-304. Discretionary DNA analysis may be ordered if the trial court finds that:

(1)      A reasonable probability exists that analysis of the evidence will produce DNA results which would have rendered the petitioner's verdict or sentence more favorable if the results had been available at the proceeding leading to the judgment of conviction;

(2)      The evidence is still in existence and in such a condition that DNA analysis may be conducted;

(3)      The evidence was never previously subjected to DNA analysis, or was not subjected to the analysis that is now requested which could resolve an issue not resolved by previous analysis; and

(4)      The application for analysis is made for the purpose of demonstrating innocence and not to unreasonably delay the execution of sentence or administration of justice.

Tenn. Code Ann. § 40-30-305. "A reasonable probability of a different result exists when the evidence at issue, in this case potentially favorable DNA results, undermines confidence in the outcome of the prosecution." *Harold James Greenleaf, Jr. v. State*, No. M2009-01975-CCA-R3-CD, 2010 WL 2244099, at *4 (Tenn. Crim. App. Apr. 21, 2010) (citations and internal quotation marks omitted).

The Post-Conviction DNA Analysis Act of 2001 "'does not specifically provide for a hearing as to the qualifying criteria . . . .'" *Dennis R. Gilliland v. State*, No. M2007-00455-CCA-R3-PC, 2008 WL 624931, at *3 (Tenn. Crim. App. March 3, 2008) (quoting *William D. Buford v. State*, No. M2002-02180-CCA-R3-PC, 2003 WL 1937110, at *3 (Tenn. Crim. App. Apr. 24, 2003)). Thus, "'[i]f the [S]tate contests the presence of any qualifying criteria [required by the Act] and it is apparent that each prerequisite cannot be

established, the trial court has the authority to dismiss the petition' in summary fashion." *Id*. at \*3 (quoting *William D. Buford*, 2003 WL 1937110, at \*6). A petitioner's failure to establish any one of the qualifying criteria results in dismissal of the action. *Powers v. State*, 343 S.W.3d 36, 48 (Tenn. 2011).

"The post-conviction court is afforded considerable discretion in determining whether to grant a petitioner relief under the Act, and the scope of appellate review is limited." *William D. Buford*, 2003 WL 1937110, at \*3. In ruling on petitioner's request for DNA analysis, the post-conviction court must consider all "available evidence, including the evidence presented at trial and any stipulations of fact made by either party." *Id.* (citation omitted). For the purpose of conducting its analysis of a petitioner's claim, a post-conviction court must presume that DNA analysis would produce favorable results to the petitioner. *Powers*, 343 S.W.3d at 55 n.28; *see* Tenn. Code Ann. § 40-30-305(1). The post-conviction court may also consider appellate court opinions on petitioner's direct appeal or his appeals of prior post-conviction or habeas corpus actions. *Powers*, 343 S.W.3d at 56 (citation omitted). This court will not reverse the judgment of the post-conviction court unless it is unsupported by substantial evidence. *See Willie Tom Ensley v. State*, No. M2002-01609-CCAR3-PC, 2003 WL 1868647, at \*4 (Tenn. Crim. App. Apr. 11, 2003).

It is clear from the petition he filed in the post-conviction court that petitioner cited to and quoted the text from Tennessee Code Annotated section 40-30-305, which governs discretionary testing. However, the post-conviction court's order dismissing the petition addressed mandatory DNA testing, and on appeal, the State approached the issue in this manner as well. This discrepancy, however, is peripheral to our review because the facts underlying the post-conviction court's conclusions with regard to the first factor of mandatory testing are equally applicable to our analysis of the first factor of discretionary testing. [1]

The post-conviction court reviewed the available evidence, including this court's opinions on direct appeal of petitioner's conviction and sentence and the denial of his petition for post-conviction relief. In ruling on petitioner's request for DNA testing, the post-conviction court found that due to the strength of the State's case, petitioner's confession, the victim's being unclothed during the attack, and the number of wounds inflicted, the State would have prosecuted petitioner notwithstanding the results of DNA testing on any of the glass found at the crime scene. The court noted that petitioner has failed to establish that the shards of glass still exist or that meaningful testing could still be performed. The post-conviction court conceded that the evidence had never been tested but reiterated that it might not even be available still. Finally, the court

---

[1] We also note, as an initial matter, that to the extent the post-conviction court addressed waiver and ineffective assistance of counsel, we disagree that petitioner sought relief in the form of ineffective assistance of counsel; his petition sought only relief in the form of DNA testing pursuant to the Act.

"questioned" petitioner's motive in requesting DNA testing approximately fifteen years after the Act was passed.

Assuming, as we must, that DNA testing would yield favorable results – in this case, that the victim's blood would be found on shards of glass collected from the crime scene – this result would, at best, be consistent with petitioner's statement wherein he alleged that glass from the broken window caused most of the victim's injuries. Identity of petitioner as the perpetrator was not at issue; he confessed to his participation but claimed self-defense. Dr. Smith opined at trial that "some" of the victim's wounds could have been caused by glass; however, there was no glass found in any of the victim's wounds.

Moreover, the post-conviction court in this case cited Dr. Smith's prior post-conviction testimony wherein he stated that "'the rug itself contained body fluids or tissue fluids such that finding that sort of material on a small fragment of glass in association with the rug but not the body would not have been of value.'" Dr. Smith acknowledged having testified at trial that "'the type of pattern of injury that [he] would expect from shards of glass would not be consistent with producing the cluster type effect of the wounds with the flick marks in those three areas.'" He also confirmed that although the wounds were consistent with being inflicted by either a glass shard or a box-cutter, there was no indication that the wounds were made by glass. The jury heard the evidence at trial and rejected petitioner's theory of self-defense. DNA testing in this case would not have yielded a more favorable verdict or sentence.

Petitioner has not asserted how a positive DNA test revealing the victim's DNA on glass found from the crime scene would result in a more favorable verdict or sentence. Because petitioner's request fails to pass the first procedural hurdle, it is not necessary to consider the remaining factors because all four factors must be satisfied to warrant DNA testing under either provision. *Powers*, 343 S.W.3d at 48. The State was not required to answer for the availability of the evidence or the condition of any remaining DNA because petitioner has not met the first requisite.

## CONCLUSION

Based on our review of the record, the briefs of the parties, and the applicable legal authority, we affirm the judgment of the post-conviction court.

_____
ROGER A. PAGE, JUDGE